IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| LISA CERCONE, ) | |
| ) | |
| Debtor, ) | Case No. 18-52431 |
| ) | |
| UNITED STATES OF AMERICA, ) | Adversary Proceeding No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge John E. Hoffman Jr. |
| ) | |
| LISA CERCONE, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

The United States of America, by its attorney, Benjamin Glassman, United Stated Attorney for the Southern District of Ohio, and Bethany Hamilton, Assistant United States Attorney for said District, on behalf of the Social Security Administration ("SSA"), complains and alleges against Lisa Cercone as follows:

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b).

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I), (J), and (O) as the complaint seeks the determination of the dischargeability of an indebtedness pursuant to 11 U.S.C. § 523(a)(2)(A).

3. Venue is appropriate in the Southern District of Ohio under 28 U.S.C. § 1409.

4. Plaintiff is the United States of America acting on behalf of SSA.

5. Cercone is an individual residing within the Southern District of Ohio.

6. Cercone filed a petition under chapter 7 of 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") on April 19, 2018.

7. That same day, Cercone filed her bankruptcy schedules.

8. In Schedule E/F, Cercone lists SSA as a creditor holding an unsecured, non-priority claim for $27,000 due to "[o]verpayment of Government Benefits."

## Statutory Framework

9. To establish entitlement to disability benefits under the Social Security Act (the "Act"), an individual must establish that she is unable to engage in substantial gainful activity ("SGA") by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(a), (d)(1)(A), (e).

10. A recipient of disability benefits may work and still receive benefits only under certain limited circumstances. To test her ability to work, a recipient may receive benefits while earning wages during a nine-month non-consecutive trial work period. 42 U.S.C. § 422(c)(4); 20 C.F.R. § 404.1592(a). Following the trial work period, a recipient may receive benefits while earning wages during a 36-month extended re-entitlement period (or "extended period of eligibility"), but only if her wages do not exceed SGA levels. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.1592a(a).

11. However, "[t]he first time [a beneficiary] work[s] after the end of [the] trial work period *and* engage[s] in [SGA], [SSA] will find that [her] disability ceased." 20 C.F.R. § 404.1592a(a)(1) (emphasis added). If SSA finds that a recipient's disability ceased due to SGA during the re-entitlement period, SSA will continue paying benefits for a three-month grace period. *Id.* at § 404.1592a(a)(2)(i). Following those three months, a recipient is not entitled to

disability benefits for any month in which she engages in SGA.  42 U.S.C. § 423(a)(1), (e); 20 C.F.R. § 404.1592a(a)(2)(i).

12. If a recipient stops engaging in SGA during the re-entitlement period, her benefits will start again for the months her earnings fall below SGA without the recipient having to file a new application for benefits.  20 C.F.R. § 404.1592a(a), (a)(2)(i).  However, "entitlement to disability benefits terminates in the first month in which [the recipient] engage[s] in [SGA] after the end of the re-entitlement period."  *Id.* at § 404.1592a(a)(3)(i).

13. A non-blind recipient engages in SGA if her monthly income exceeds the following amounts during the following years:

| Year | Amount |
|------|--------|
| 2011 | $1,000 |
| 2012 | $1,010 |
| 2013 | $1,040 |
| 2014 | $1,070 |
| 2015 | $1,090 |

*See* SSA Official Website, https://www.ssa.gov/oact/cola/sga.html (last visited July 17, 2018).

## The Application

14. On or about April 24, 2002, Cercone filed an application for Social Security Disability Insurance Benefits ("DIB").  *See* Exh. A.

15. In the application, Cercone agreed "to notify the Social Security Administration if," among other things, "I go to work whether as an employee or a self-employed person."  *See* Exh. A at 2.  By signing the application, Cercone acknowledged that she understood these "events may affect my eligibility to disability benefits as provided in the Social Security Act" and confirmed that "my reporting responsibilities have been explained to me."  *See* Exh. A at 3.

16. Cercone signed her name directly under the following certification:

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

*See* Exh. A at 3.

### Cercone's Receipt of DIB and Other Notifications of Her Duty to Report

17.   On September 10, 2002, SSA sent Cercone an award letter notifying her that she was entitled to DIB beginning March 2002. *See* Exh. B.

18.   In the award letter, SSA informed Cercone that "[t]he decisions we made on your claim are based on information you gave us." *Id.* at 2. For this reason, "it is important that you report changes to us right away." *Id.; see also* 20 C.F.R. § 404.1588 (providing that a disability recipient "should promptly tell" SSA if her condition improves; she returns to work; she increases the amount of her work; or her earnings increase).

19.   Included with the award letter, SSA enclosed a pamphlet entitled "When You Get Social Security Benefits . . . What You Need To Know," SSA publication no. 05-10153 (the "Pamphlet"), and advised Cercone to "[b]e sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves." *See* Exh. B at 2; Exh. C.

20.   The Pamphlet notified Cercone, "You should promptly report any changes that may affect your disability benefits." *See* Exh. C at 13. The Pamphlet further explained: "You should tell us if you take a job or become self-employed, **no matter how little you earn**." *See Id.* (emphasis in original).

21.   On September 19, 2002, SSA sent Cercone a letter notifying her that she was also entitled to Supplemental Security Income from May 2002 to September 2002. *See* Exh. D. In the

letter, SSA again informed Cercone that she must "report any change in your situation that may affect your SSI" including informing SSA if "you go to work." *See id*. at 3.

22. In March 2008, SSA completed a review of Cercone's disability and found she was still disabled. The notice informing Cercone of that determination included a reminder to "tell us right away about any changes that may affect your benefits" including if "you went to work since your last report or you return to work in the future (no matter how little you earn)." *See* Exh. E at 1. The notice also included an explanation of the trial work period. *See* Exh. E. at 2-3.

23. In addition, each year in January, SSA sent out a notice to beneficiaries, including Cercone, regarding the annual Cost-of-Living-Adjustment for benefits, and enclosed a letter reminding beneficiaries that they must report all earnings to SSA.

## The Overpayment

24. Unbeknownst to SSA, Cercone returned to work and earned SGA beginning in April 2009. Unaware that she returned to work and earned SGA, SSA continued to pay Cercone her monthly benefits.

25. SSA was first alerted to Cercone's unreported work activity in October 2010 as a result of one of SSA's periodic computerized earnings checks. SSA conducts periodic reviews of its beneficiaries that return information about their employment histories and income. *See* 20 C.F.R. § 404.1590(b)(5). When a beneficiary's record is flagged, SSA then follows up with its own investigation to verify the individual's earnings and employment.

26. An individual's interest in the continued receipt of Social Security benefits is a statutorily-created property interest protected by the due process clause of the Fifth Amendment to the federal constitution. For that reason, SSA cannot terminate an individual's benefits until

an administrative determination of ineligibility, made with appropriate procedural safeguards, becomes final.

27.     During such an investigation, it is SSA's usual business practice to request information from the individual regarding her work activity using a Work Activity Report (SSA form 821).

28.     SSA requested that Cercone complete a Work Activity Report in April 2011. SSA did not receive a response. SSA sent Debtor another Work Activity Report to complete in May 2011. Debtor failed to submit the Work Activity Report on either occasion. *See* Exh. F.

29.     In June 2011 SSA began the process of verifying Cercone's earnings through her employers. *See* Exh. G.

30.     In January 2012, SSA sent Cercone a "Notice of Proposed Decision" to inform her that they had information about her earnings through December 2010 that could affect her disability benefits, possibly making her ineligible for benefits from April 2010 to September 2010 *See* Exh. H. The letter informed Cercone of her opportunity to provide any information for SSA to consider before its decision. *See id.* at 1, 4.

31.     The letter noted that Cercone performed work and earned above the trial work period threshold—for a total of nine months—from April 2009 through December 2009. *See id.* at 2. Is he These nine months constituted Cercone's trial work period. *See id.* 1-2.

32.     After her trial work period ended, Cercone entered her 36-month "extended period of eligibility" in January 2010. *See id.* at 3; *see also* 20 C.F.R. § 404.1592a. During this time, Cercone would not be entitled to disability benefits when her earnings constituted SGA. *See* Exh. H at 3. Conversely, disability benefits restart any month that a beneficiary is not earning SGA. *See id.*

33. SSA did not receive any information from Cercone in response to the January 2012 notice.

34. In February 2012, SSA sent Cercone a "Notice of Disability Cessation" informing her that she was in fact not eligible for benefits from April 2010 through September 2010 due to her earnings exceeding SGA levels. *See* Exh. I. It also stated that she was "entitled to payments for months beginning October 2010 because [she was] no longer doing substantial work. *Id.* This letter also reminded Cercone of her duty to "tell us right away about any changes that may affect your benefits," including working, and notified Cercone that she "may have to repay any benefits you are not due." *See id.* at 3-4.

35. Unbeknownst to SSA at the time, Cercone continued to work and earn income above SGA levels from January 2011 through December 2011, and March 2013 through October 2014. *See* Exh. J at 3-4. Therefore, Cercone was not entitled to receive disability benefits these months. However, Cercone failed to accurately report her earnings to SSA, despite the fact that SSA had repeatedly informed Cercone of her reporting responsibilities and she understood the consequences of failing to report. *See e.g.,* Exh. A at 3; Exh. B at 2; Exh. C at 13; Exh. at I at 3. Unaware of Cercone's continued substantial gainful activity, SSA continued to pay her benefits. *See* Exh. J at 3-4.

36. In January 2014, SSA began investigating Cercone after receiving another earnings alert from a periodic computerized earnings check.

37. On September 15, 2014, SSA asked Cercone to come into an SSA office "to talk to [her] regarding [her] earnings from 2008 to 2013" and to bring her W-2 forms from that period. *See* Exh. K.

38. Cercone did not respond to the request.

39. On September 23, 2014, SSA sent Cercone a "Notice of Proposed Decision" notifying her that she may be ineligible for benefits from April 2010 through September 2010, January 2011 through December 2012, and March 2013 onwards because of her earnings. *See* Exh. L.

40. In November 2014, SSA sent Cercone a "Notice of Revised Decision" informing her that she was not eligible for benefits from April 2010 through September 2010, January 2011 through December 2012, and March 2013 onwards because of her work activity. *See* Exh. M; 20 C.F.R. § 404.1592a(a)(3)(i).

41. In November 2014, SSA also sent Cercone a notice of overpayment, informing her that she was overpaid $27,433.60 in benefits because she performed substantial gainful activity April 2010 through September 2010, January 2011 through December 2012, and March 2013 through November 2014. *See* Exh. N. The notice also provided Cercone with her appeal rights. *Id.* at 2-3.

42. Because Cercone failed to accurately report her income to SSA, the Agency continued to pay her disability benefits to which she was not entitled until November 2014. *See* Exh. M.

43. Cercone did not request a waiver of her overpayment. After repayments and withholdings, her current overpayment debt to SSA totals $27,090.60.

### Exception to Discharge of Debt Owed by Cercone to SSA

44. Cercone had a duty to timely report her work activity and earnings to SSA.

45. Cercone falsely and fraudulently failed to inform SSA that she earned income sufficient to constitute SGA.

46. Cercone's failure to report her work activity and earnings was knowing and willful.

47. Cercone's knowing and willful failure to report work activity and earnings caused SSA to advance monthly disability payments to Cercone that Cercone was not entitled to receive.

48. The amount of SSA's overpayment to Cercone totals $27,090.60.

49. SSA sustained a loss in the amount of the overpayment, caused by Cercone's false and fraudulent failure to inform SSA of his work activity and earnings.

50. Cercone obtained the overpayment from SSA by false pretenses, a false representation, and/or actual fraud.

51. Pursuant to section 523(a)(2)(A) of the Bankruptcy Code, the overpayment constitutes a nondischargeable debt in Cercone's bankruptcy case.

WHEREFORE, the United States of America respectfully requests that this honorable Court determine that the remaining unrepaid overpayment owed by Cercone to the United States of America, Social Security Administration, constitutes a non-dischargeable sum pursuant to section 523(a)(2)(A); and grant such other relief as the Court may deem appropriate.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United Stated Attorney

By: /s/ Bethany Hamilton
Bethany Hamilton (0075139)
Assistant United States Attorney
United States Attorney's Office
Southern District of Ohio
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
(614) 469-5715 / Fax: (614) 469-5240
Email: Bethany.Hamilton@usdoj.gov